IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MEGAN MILO,**<br><br>   **Plaintiff,**<br><br> v.<br><br>**CYBERCORE TECHNOLOGIES, LLC.,**<br>*et al.*,<br><br>   **Defendants.** | Civil No.  18-cv-03145 (RDB) |

**DEFENDANT NORTHROP GRUMMAN CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT**

  Defendant Northrop Grumman Corporation ("NGC") submits this Memorandum of Points and Authorities in Support of its Motion to Partially Dismiss Plaintiff Megan Milo's Complaint. Specifically, the Court should dismiss Plaintiff's hostile work environment claim (Count I) for failure to state a claim upon which relief can be granted.

**I. INTRODUCTION**

  In her Complaint, Plaintiff ("Milo") alleges that Defendants CyberCore Technologies, LLC ("CyberCore") and NGC (collectively, "Defendants") subjected her to a *hostile work environment* on the basis of her sex (Count I), *discriminated* against her on the basis of her sex (Count II), and *retaliated* against her for allegedly engaging in protected activity (Count III), all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  Specifically, Plaintiff alleges that Defendants harassed her and discriminated against her because she has a "female gender identity" and "feminine gender expression," and "is a woman who is transgender."

  In this Motion, NGC moves to dismiss Plaintiff's hostile work environment claim (Count I) only. That is, Milo has not stated a claim upon which relief can be granted under the pleading

standards, as set forth in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), because she has not alleged, with sufficient facts, that the conduct about which she complains was "severe or pervasive." Therefore, this count should be dismissed as a matter of law.[1]

## II.     NOTICE

A key aspect of this case will be whether Title VII covers employees who are transgendered. Of note, the Supreme Court of the United States will soon decide whether to grant *certiorari* in a trio of cases – *Altitude Express v. Zarda, Bostock v. Clayton County, Georgia, and R.G. & G.R. Harris Funeral Homes Inc. v. EEOC* – which involve questions whether Title VII's existing prohibition against sex bias covers sexual orientation in the *Zarda* and *Bostock* cases and gender identity in *Harris*. If the Court grants *certioriari*, NGC may file a Motion to Stay pending the outcome of these cases because they would determine whether Plaintiff is covered broadly by Title VII.

## III.    STATEMENT OF RELEVANT FACTS[2]

### A.     Plaintiff's Allegations

Plaintiff alleges that she jointly worked for CyberCore and NGC in Maryland. (Compl. ¶ 10). Plaintiff alleges that she began her employment with Defendants on or about December 1, 2012 as a Senior Software Engineer, and Defendants promoted her to Task Lead in February 2013. (*Id*. ¶¶ 37, 39). Milo had significant contact with employees from NGC, employees from other subcontractors, and employees from the federal government. (*Id*. ¶¶ 43-44).

---

[1] Defendant does not move at this time to dismiss Plaintiff's claim that she was terminated because of her sex or gender and/or in retaliation for engaging in alleged protected activity (Counts II and III).

[2] Solely for purposes of this Motion, NGC treats Plaintiff's factual allegations in the Complaint as true.

On or about March 28, 2013, Plaintiff began living as a female full-time. (*Id*. ¶ 40). Shortly before this date, Defendants, as well as managers from the federal government, held a meeting to explain to "everyone on the floor that she would be transitioning to the female sex, that she would use 'she' and 'her' pronouns, and that she should be treated with dignity and respect." (*Id*. ¶ 55).

In early April 2013, Plaintiff alleges that "Ms. Anderson" told her that her skirt was too short and "bothering people," while other female employees were allowed to wear shorter skirts. (*Id*. ¶ 55(a)). In or around March 2013, Theresa Olson, a subcontractor of CyberCore, told Plaintiff that she "hated" transgendered people because her ex-husband was transgendered. (*Id*. ¶ 55(b)). Three months later, in June 2013, Plaintiff reported this conversation to Brenda Anderson, her supervisor at CyberCore, and to an NGC representative. (*Id*.).

In or about June 2013, Plaintiff and a male coworker got into an argument, and Plaintiff alleges that Ray Wise, the Office Manager, "corrected" her, but not the male coworker, and that this issue later "showed up" on her Performance Improvement Plan ("PIP"). (*Id*. ¶ 55(c)).

In September 2013, Alex Davis and Ms. Olson "misgendered" Plaintiff, and another manager who witnessed the conversation suggested that Milo "lay low" and not complain to management. (*Id*. ¶ 55(d)). Mr. Davis, however, later complained to Human Resources that he was "walking on eggshells" around Plaintiff. (*Id*. ¶ 55(e)). Based on Mr. Davis's complaint, Defendants allegedly placed her on a 30-day probation and PIP. (*Id*. ¶ 55(f)). In part, the PIP stated "interaction with coworkers is causing Megan to perform at a subpar level." (*Id*. ¶ 55(h)).

Defendants also informed Plaintiff that she: (a) should not complain in "public forums," (b) should treat all customers and coworkers with respect, and (c) "must extend the same

3

understanding and latitude of her coworkers that she expects for herself.  The team is walking on eggshells in fear of creating a perceived slight or offense." (*Id*.)

After 30 days had passed, Plaintiff was no longer on the PIP.  (*Id*. ¶ 62).  In February 2014, Mr. Davis again "misgendered" Plaintiff, and, in response, she "spoke" with him about it.  (*Id*. ¶ 63). Shortly thereafter, Defendants allegedly terminated Plaintiff's employment because of her "bad attitude." (*Id*. ¶ 67).

## IV.    STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper when a complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. § 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Overall, the function of Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *Id.* at 1134-1136.  A court should grant a motion to dismiss when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *Iqbal*, 129 S. Ct. at 1959 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.") (internal quotations omitted).

## V.    THE CONDUCT ABOUT WHICH PLAINTIFF COMPLAINS WAS NOT "SEVERE OR PERVASIVE," AS A MATTER OF LAW

To state a claim for hostile work environment based on sex or gender, Plaintiff must allege that she was subjected to offending conduct that (1) was unwelcome, (2) was because of her sex or gender,[3] (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer.

---

[3] As noted above, if the Supreme Court holds that an employee who is transgendered is not covered by Title VII, Plaintiff will be unable to establish the second element.

*Evans v. Md. State Highway Admin.*, No. 18-cv-935, 2018 U.S. Dist. LEXIS 169866 (D. Md. Oct. 2, 2018) citing *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009). Here, assuming Title VII coverage for the sake of argument, the Court should dismiss Plaintiff's hostile work environment claim (Count I) because she fails to allege with sufficient facts that Defendants subjected her to "severe or pervasive" conduct, as a matter of law.

"Title VII does not attempt 'to purge the workplace of vulgarity.'" *Hopkins v. Balt. Gas and Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (*citing Baskerville v. Culligan Int'l* Co., 50 F.3d 428, 430 (7th Cir. 1995)). Further, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious), do not amount to discriminatory changes in the terms and conditions of employment." *Evans*, 2018 U.S. Dist. LEXIS at *16. Indeed the "'severe and pervasive' standard sets a relatively high bar—'complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII.'" *Bacchus v. Price*, No. 17-cv-1511, 2018 U.S. Dist. LEXIS 124131, at *19 (D. Md. July 25, 2018) quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-316 (4th Cir. 2008).

Courts evaluate the "severe or pervasive" element by considering all of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).

Here, Milo's hostile work environment claim is premised on: (a) a few incidents of being misgendered after her transition was announced (meaning, she was referred to as a "he"); (b) being told her skirt was too short, (c) being told by a coworker that she hates trangendered people because her ex-husband was transgendered, (d) getting into an argument with a coworker

(but the male coworker was not "corrected," as she was), (e) being the subject of an internal complaint because at least one individual believed he was "walking on eggshells" around Plaintiff, and (f) being placed on a PIP. (Compl. ¶ 55).

Simply put, these allegations fall far short of meeting the "severe or pervasive" standard, as a matter of law. *See Bacchus*, 2018 U.S. Dist. LEXIS at \*20-21 ("Here, Plaintiff has failed to allege that she endured a hostile work environment. First, most of Plaintiff's allegations, including her loss of telework privileges, re-assignments, and receipt of unwarranted criticism, fit squarely into the non-actionable category of merely callous behavior by one's supervisors."); *Grady v. McCarthy*, No. 17-cv-1141, 2018 U.S. Dist. LEXIS 105417, at \*66-67 (D. Md. June 22, 2018) (the "incidents alleged by Grady are sporadic and infrequent, rather than constant and incessant. For example, Grady alleged that, during the course of 2014, she experienced the anonymous placement of a photo of a bug on her chair, her supervisor's verbal reprimand and reference to her as a 'trouble maker,' the receipt of an email from a coworker, referring to her as a 'bitch and whore,' and the modification of her computer to reference 'NAE//: prayer ready' are insufficient to state a hostile work environment claim."); *Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) ("Here, Lim's hostile work environment claim is based on the alleged denial of his requests to change his preceptor, the setting of 'bogus deadline[s]' for submitting project proposals, plagiarism of his work, derogatory statements about his competence and professionalism, and 'treating him as a jerk.' SAC ¶¶ 72-78. These and the other allegations in the Second Amended Complaint do not describe harassment that is severe or pervasive enough to establish a hostile work environment.").

To adequately allege a hostile work environment claim under *Twombly* and *Iqbal*, a plaintiff must meet a high bar. *See Eckert v. Quality Assocs.*, No. 14-cv-1815, 2015 U.S. Dist.

LEXIS 113775, at *16-17 (D. Md. Aug. 26, 2015) (an allegation that harasser "rub[bed] her breasts up against" plaintiff when they worked in tight quarters did not state a claim for sexual harassment); *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 529 (D. Md. 2015) (plaintiff's allegations that harasser "exposed his chest and made inappropriate body movements towards her," and told her she looked "like a piece of candy" does not state a plausible hostile work environment claim); *Mason v. Montgomery County*, No. 13-cv-1077, 2015 U.S. Dist. LEXIS 80933 (D. Md. June 23, 2015) (plaintiff failed to allege a hostile work environment based on, among other allegations: he had to follow different and more arduous procedures to request training; he was assigned to posts which were considered a dangerous assignment, when White officers of the same rank as Plaintiff were assigned in a secured area; he was suspended and placed on leave without pay when criminal charges were brought against him; and after he notified his supervisors that the charges were dismissed, the Department refused to lift Plaintiff's suspension or grant his request to use his 350 hours of annual leave in lieu of being placed on leave without pay; and the Department refused to reimburse him for the lost pay and benefits after reinstatement); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (holding that a plaintiff's allegations that her supervisor "yelled at [her], told her she was incompetent, pushed her down in her chair, and blocked the door to prevent [her] from leaving while he continued to yell at her" were not sufficient to establish a hostile work environment claim).[4]

*Parker v. Strawser Construction, Inc.*, 307 F. Supp. 3d 744 (S.D. Ohio 2018) is highly instructive because, there, the Court recently considered whether a plaintiff, who is also transgendered, adequately alleged a hostile work environment. There, plaintiff alleged:

---

[4] *Compare with White v. BFI Waste Services, LLC*, 375 F.3d 288, 297 (4th Cir. 2004) (finding racial harassment where supervisors "*repeatedly*" called plaintiff and other black employees "boy, jigaboo, nigger, porch monkey, Mighty Joe Young and Zulu warrior"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001) (finding racial harassment where supervisor "*habitually* called plaintiff 'monkey,' 'dumb monkey,' and 'nigger').

7

> that she was 'subjected to constant and continuing harassment due to her gender transition'; that Kelly 'made repeated derogatory and discriminatory gender, gender identity, and transition comments and jokes'; that after she reported Kelly's harassment to Ernst, 'Kelly's sexual harassment of Parker intensified'; that 'Strawser's harassment of Parker only intensified in 2013'; that she was sexually assaulted by Jordan, after which her co-workers harassed her for Jordan's termination; that 'Ernst stated that he would treat Parker better if she performed sexual favors'; that she suffered 'constant harassment and fear of physical abuse'; and that after she returned from suspension, 'the harassment . . . did not cease'; (Doc. 10, Am. Compl. ¶¶ 56, 58, 68, 75, 102, 107, 115, 147).

*Id*. at 758. While the allegations in *Parker* are far more severe than the allegations in the instant case, the Court was conflicted and noted her "*allegations present a close[] case.*" *Id.* (emphasis added). The Court ultimately concluded that at the "early pleading stage," plaintiff had sufficiently alleged a hostile work environment on the basis of her transgender status. *Id.* By contrast, the case at bar is not even a close call.

*Vernon v. Allied Barton Security Services*, No. 10-cv-00167, 2013 U.S. Dist. LEXIS 82502 (M.D. Tenn. June 12, 2013) is also instructive. There, plaintiff claimed that a District Manager complained about plaintiff's manner of dress and uttered the derogatory term "dyke." The Court held that plaintiff failed to establish that the manager's conduct was severe or pervasive. Specifically, the plaintiff believed the following conduct constituted severe or pervasive conduct:

> Wagner (1) using the term 'dyke' and asking Plaintiff about her sexual preferences; (2) telling Vernon he wanted to make sure she was not a 'dyke' like the last Assistant Account Manager; (3) telling Vernon that he had told Laury that she was not a 'dyke'; (4) asking whether Vernon was married or had a boyfriend; (5) telling Vernon she needed 'to start dressing more feminine, 'dress like a girl' and 'show off [her] legs'; and (6) 'several times a week' looking out the window at an adjacent transgender reassignment clinic and speculating whether the individuals coming and going were male or female.

*Id*. at *27-28. The Court held that "these statements identified by Vernon, if made, do not rise to the level of an abusive or sexually harassing workplace, as that concept has been understood in the law." *Id*. at *29. If those allegations fall short of establishing a hostile work environment,

8

the allegations in this case must, as well.

*Heller v. Columbia Edgewater Country Club*, 195 F. Supp. 2d 1212 (D. Or. 2002) provides an example of when a plaintiff, who was a gay female, *was* able to sufficiently establish a hostile work environment based on the following specific, severe and pervasive derogatory comments made by her supervisor, among others, over a nine-month period:

- Asked Plaintiff questions such as: "Do you wear the dick in the relationship?" and, "Are you the man?"

- Commented on her "faggy shoes," which plaintiff construed as a reference to plaintiff wearing "men's shoes."

- Referred to plaintiff as "fag," "faggy," and "homo," or stated "thought that was a fag thing," "that's just a homo thing," or "Oh, you're just a homo."

- After a second employee disclosed that he was gay, the manager asked plaintiff, "Did you rub off on him?" When Heller started to walk past Cagle in the kitchen, Cagle allegedly exclaimed, "Stay away from me because it might rub off on me," and "No, no, don't come near me."

- When the second employee bleached his hair (similar to plaintiff's hair), the manager remarked to plaintiff, "It must be a fag thing."

- Both openly gay employees worked on the night crew. The manager became critical of that crew, making statements such as, "What happens here at night? Just one big fag party?"

*Id.* at 1217-1218.  In stark contrast, a similar series of facts is not present in this case at all.

Accordingly, the Court should dismiss Plaintiff's hostile work environment claim (Count I) because she fails to state a claim upon which relief can be granted.

## V.     **CONCLUSION**

Based on the foregoing, Defendant Northrop Grumman Corporation respectfully requests that the Court grant its Motion to Partially Dismiss Plaintiff's Complaint, as set forth in the attached proposed Order.

Respectfully submitted,

*/s/ Steven E. Kaplan*
Joseph P. Harkins (Bar No. 14007)
Steven E. Kaplan (Bar No. 16531)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, N.W.
Suite 400
Washington, DC  20006
(202) 842-3400  Telephone
(202) 842-0011  Facsimile
jharkins@littler.com
skaplan@littler.com

*Counsel for Defendant*
*Northrop Grumman Corporation*