# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MEGAN MILO | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-18-3145 |
| CYBERCORE TECHNOLOGIES, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Megan Milo ("Milo") is a transgender woman who brings this action against CyberCore Technologies, LLC ("CyberCore") and Northrop Grumman Corporation ("Northrop") (collectively, "Defendants") alleging discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and under Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title I"). (Compl., ECF No. 1.) Milo alleges that Defendants subjected her to a hostile work environment (Count 1) and terminated her (Count 2) because of her sex, gender identity, and gender expression as a transgender woman. (*Id.*) Milo further alleges that Defendants harassed and terminated her in retaliation for making internal complaints about the alleged discrimination (Count 3). (*Id.*)

Currently pending before this Court is Defendant CyberCore Technologies, LLC's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 22); Defendant Northrop Grumman Corporation's Motion to Partially Dismiss Plaintiff's Complaint (ECF No. 23); Defendant CyberCore Technologies, LLC's Objection to and Motion to Strike the Declaration of Nicolas Salter, Ph.D. (ECF No. 33); and Plaintiff Ms. Megan Milo's Motion

for Leave to File Surreply in Response to Defendant CyberCore Technologies, LLC's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 36). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018).

For the reasons that follow, CyberCore's motion, treated as a motion to dismiss, shall be GRANTED, and all claims against CyberCore shall be DISMISSED WITHOUT PREJUDICE; Northrop's motion to dismiss Count 1 shall be GRANTED and Count 1 against Northrop shall be DISMISSED WITHOUT PREJUDICE; and Counts 2 and 3 shall proceed against Northrop. With regard to CyberCore's motion to strike Milo's expert declaration, this type of advance expert testimony opinion on a legal conclusion has previously been rejected by this Court, and CyberCore's motion to strike it shall be GRANTED. The declaration and report of Nicholas Salter, Ph.D. shall be STRICKEN from Milo's Opposition to CyberCore's dismissal motion. Finally, Milo's motion seeking to file a surreply in response to CyberCore's dismissal motion, shall be GRANTED. The proposed Surreply (ECF No. 36-2) shall be considered by this Court in reaching a decision on CyberCore's dismissal motion.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). CyberCore is a professional services job placement agency that provides skilled personnel to staff government contracts. (CyberCore Mot. Mem. 1, ECF No. 22-1.) On December 1, 2012, Milo was hired by CyberCore as a Senior Software

Engineer to work on a classified government contract managed by a federal government agency and the prime contractor, Northrop. (*Id.* at 3; Compl. ¶ 37, ECF No. 1.) Milo alleges that CyberCore and Northrop were joint employers, although Milo was the only CyberCore employee at the location, and Milo's managers were from Northrop. (Compl. ¶¶ 37-38, 41-43, 45-52, ECF No. 1.) At that time, Milo was known as a male named Doug Milo. (CyberCore Mot. Mem. 3, ECF No. 22-1.)

Milo began living full-time as a female named Megan Milo on or about March 28, 2013. (Compl. ¶ 40, ECF No. 1.) Before Milo's gender transition, managers from CyberCore, Northrop, and the federal government agency held a meeting, during which they explained to everyone that she would be transitioning to the female sex, that she would use "she" and "her" pronouns, and that she should be treated with dignity and respect. (*Id.* at ¶ 53.) Milo alleges that some of her co-workers ignored this directive and engaged in discriminatory harassing conduct because of her sex. (*Id.* at ¶ 54.) For example:

- In April 2013, Ms. Anderson, Milo's supervisor at CyberCore, told her that her skirt was too short, and when Milo pointed out another employee with a short skirt, Ms. Anderson responded: "Well that doesn't matter. She doesn't work for me, you do." (*Id.* at ¶ 55.)

- A co-worker told her that she "hated" transgender people because her ex-husband was transgender. (*Id.*) Milo alleges that she reported this statement to Ms. Anderson in June 2013. (*Id.*)

- In June 2013, Milo had a loud contentious discussion with a male co-worker and was later corrected by Ray Wise, the Office Manager, even though her male co-worker was not corrected. (*Id.*)

- A manager, Tom Morehead, witnessed misgendering[1] by two of Milo's co-workers, Alex Davis and Theresa Olson. (*Id.*) Milo alleges that in September

---

1     I.e., referring to Milo with male pronouns rather than female pronouns.

2013, Tom Morehead told Milo to "lay low" because she was being targeted, and if she were to complain, she would be in worse trouble. (*Id.*)

- Alex Davis brought a complaint against her to Human Resources, stating that he was "walking on eggshells" around Milo because of her request to be called by her female name and the proper pronouns. (*Id.*)

- In October 2013, Ms. Anderson, Milo's supervisor, Jeremy Knapp, a Northrop representative, the Human Resources manager, and a Northrop program manager met with Milo and put her on a 30-day probationary period based on Alex Davis' complaint. (*Id.*) Milo explained that Alex Davis' conduct was discriminatory and requested that the misgendering and poor treatment stop. (*Id.*) Milo alleges that Jeremy Knapp responded: "What you think really doesn't matter." (*Id.*)

- A Performance Improvement Plan ("PIP") was issued as part of Milo's probationary period, stating as a reason "interaction with coworkers is causing Megan to perform at a subpar level." (*Id.*) Milo was given a list of concerns to address during probation, which included not complaining in public forums, treating all customers and coworkers with respect, and the statement: "Northrop Grumman management recognizes that there are extenuating circumstances, but Megan must extend the same understanding and latitude to her coworkers that she expects for herself. The team is walking on eggshells in fear of creating a perceived slight or offense." (*Id.*)

After 30 days, around the end of November 2013, Milo's supervisor spoke with Northrop and confirmed that Milo was no longer on probation. (*Id.* at ¶ 62.) In February 2014, Milo spoke to Alex Davis again about the misgendering. (*Id.* at ¶ 63.) Milo alleges that around this same time, she believes that Theresa Olson had a meeting with Jeremy Knepp, a Northrop representative, about Milo's employment, and at this meeting, Northrop requested Milo's termination. (*Id.* at ¶¶ 64-65.) On February 28, 2014, Milo's supervisor, Ms. Anderson, called Milo into a meeting and terminated her, giving her a choice to take a layoff or be fired because of her "bad attitude." (*Id.* at ¶¶ 66-67.) Milo alleges that Ms. Anderson advised her to take the layoff because if she were terminated, she would never be able to work in the Intelligence Community again. (*Id.* at ¶¶ 69-70.) No other person was "laid off." (*Id.* at ¶ 72.)

4

On or about August 28, 2014, Milo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII. (*Id.* at ¶¶ 15-18.) The EEOC must assume its own investigation of the charge to determine whether there is reasonable cause to believe that unlawful discrimination has occurred. *See* 42 U.S.C. § 2000e-5(b). After making its determination, the EEOC must either dismiss the charge, reach a conciliation agreement, or institute a civil action. 42 U.S.C. § 2000e-5(b). If the EEOC has not taken these actions after the required period of time has passed, the plaintiff may submit a written request that the EEOC issue a notice of right to sue, commonly called a "right-to-sue letter." 29 C.F.R. § 1601.28(a)(1). In this case, Milo received the right-to-sue letter and within 90 days of receipt, on October 11, 2018, Milo filed the instant three-count lawsuit. (*See* Compl. ¶ 18, ECF No. 1.)

On December 13, 2018, CyberCore filed a motion to dismiss, and Northrop filed a motion to dismiss in part. (ECF Nos. 22, 23.) These motions are now fully briefed and ripe for decision. For the reasons that follow, these motions shall be GRANTED. Specifically, all claims against CyberCore and Count 1 against Northrop shall be DISMISSED WITHOUT PREJUDICE; Counts 2 and 3 shall proceed against Northrop.

Additionally, CyberCore filed a motion to strike a declaration that Milo attached to her response to CyberCore's motion. (ECF No. 33.) This type of advance expert testimony opinion on a legal conclusion has previously been rejected by this Court, and CyberCore's motion to strike it shall be GRANTED. The declaration and report of Nicholas Salter, Ph.D. shall be STRICKEN from Milo's Opposition to CyberCore's dismissal motion.

Milo also filed a motion seeking to file a surreply in response to CyberCore's dismissal motion, which this Court shall GRANT. (*See* ECF No. 36.) The proposed Surreply (ECF No. 36-2) shall be considered by this Court in reaching a decision on CyberCore's dismissal motion.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Moreover, a court need not accept any asserted legal conclusions drawn from the proffered facts. *Iqbal*, 556 U.S. at 678. (stating that "[t]hreadbare recitals of the elements of a

6

cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 584 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line

7

from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## ANALYSIS

### I. Motion to Strike

Necessarily, this Court shall begin its analysis by determining which exhibits are properly before the Court at this time. Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike and only permits the striking from a pleading of "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are disfavored and "should be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–55 (D. Md. 2003). A court may consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as documents attached to a motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). However, as this Court has previously noted, "Plaintiffs may not substitute factual allegations with the speculation of their expert witness." *Lerner v. Northwest Biotherapeutics*, 273 F. Supp. 3d 573, 590 (D. Md. 2017).

As discussed below, CyberCore argues in its dismissal motion that Milo fails to allege facts sufficient to establish a severe or pervasive hostile work environment. When Milo responded to the motion, she attached the Declaration of Nicholas Salter, Ph.D., and Dr. Salter's accompanying report, as Exhibit C to her opposition. (Ex. C, ECF No. 28-3.) Dr. Salter's opinion and report was based solely on his review of the Complaint and opines on the legal issue of whether Milo was subjected to severe or pervasive harassment. (*See id.*) As such,

the expert report does not form the basis of the complaint, is not integral to the complaint, and this Court will not refer to it as a substitution for its own analysis of the facts that have been alleged.

Accordingly, CyberCore's motion to strike Milo's expert report shall be GRANTED. The declaration and report of Nicholas Salter, Ph.D. shall be STRICKEN from Milo's Opposition to CyberCore's dismissal motion.

## II.    Motion to File Surreply

Before turning to the merits of the Defendants' motions to dismiss, this Court addresses Plaintiff Ms. Megan Milo's Motion for Leave to File Surreply in Response to Defendant CyberCore Technologies, LLC's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 36). As this Court has previously indicated, surreplies are not part of this Court's usual briefing schedule:

> In general, parties are not permitted to file surreplies. Local Rule 105.2(a) (D. Md. 2011). A party moving for leave to file a surreply must show a need for a surreply. *Id.* If a defendant raises new legal issues or new theories in its reply brief, there is a basis to permit a plaintiff to file a surreply. *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 862 (D. Md. 2009); *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 466 (D. Md. 2008). Moreover, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

*MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, Civ. A. No. RDB-12-02109, 2013 WL 1224484 (D. Md. Mar. 26, 2013).

Milo seeks leave to file a surreply on the basis that CyberCore raised issues in its Reply related to notice of harassment that had not been referenced before. (*See* Mot. Mem. Surreply, ECF No. 36-1.) Defendants have not objected to the filing of a surreply. This Court finds that the filing of a surreply is warranted and shall GRANT Milo's motion to file a surreply. This Court shall consider the proposed Surreply (ECF No. 36-2) in reaching a decision on CybercCore's dismissal motion.

### III. Sufficiency of Allegations

#### A. Count 1 – Hostile Work Environment

In Count 1, Milo alleges that CyberCore and Northrop personnel harassed her and discriminated against her on the basis of sex, which is a violation of 42 U.S.C. § 2000e, *et seq.* (Compl. ¶¶ 90-108, ECF No. 1.) CyberCore and Northrop both contend that Milo has not alleged sufficient facts to state a plausible claim of a severe or pervasive hostile work environment.

The elements of a Title VII claim for hostile work environment are: "(1) unwelcome conduct; (2) that is based on [a protected status]; (3) which is sufficiently severe or pervasive to alter . . . conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)). Alleging the first element, unwelcome conduct, "is not a high hurdle." *Id.* at 328. The second element "requires that the offending conduct be based on the employee's 'race, color, religion, sex, or national origin.'" *Id.* at 329 (quoting 42 U.S.C. § 2000e-2). The third element "requires that the offending conduct be 'sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment.'" *Id.* (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (*en banc*)).

The United States Court of Appeals for the Fourth Circuit has repeatedly held that "an employee can demonstrate that certain conduct is unwelcome simply by voicing her objection to the alleged harasser or to the employer." *Id.* at 328-29 (citations omitted). There is no dispute that Milo has adequately alleged the first element. (CyberCore Mot. Mem. 8 n.2, ECF No. 22-1; *see* Northrop Mot. Mem. 2, ECF No. 23-1; Compl. ¶ 55, ECF No.1.)

With regards to the second element, both CyberCore and Northrop accept it as alleged for purposes of their motions but note that it is not firmly established whether "because of . . . sex" prohibits discrimination against individuals because of their sexual orientation or gender identity. (CyberCore Mot. Mem. 8 n.2, ECF No. 22-1; *see* Northrop Mot. Mem. 2, ECF No. 23-1 (citing *Bostock v. Clayton County*, *Altitude Express v. Zarda*, and *R.G. & G.R. Harris Funeral Homes v. EEOC*.) On April 22, 2019, the Supreme Court announced that it will review these cases, and oral argument is scheduled for October 8, 2019. *See, e.g., R.G. & G.R. Harris Funeral Homes, Inc. v. E.E.O.C.*, 139 S. Ct. 1599 (Mem) (Apr. 22, 2019). In *Harris*, the Supreme Court will specifically review the following question: "Whether Title VII prohibits discrimination against transgender people based on (1) their status as transgender (2) sex stereotyping under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989)." *Id.*

Defendants stated that they may move to stay proceedings in this case pending the outcome of any of these cases being granted *certiorari* by the United States Supreme Court. (*See* CyberCore Mot. Mem. 8 n.2, ECF No. 22-1; Northrop Mot. Mem. 2, ECF No. 23-1.) However, no stay motion has yet been filed. At this point, this Court is not inclined to stay

11

this case, but remains cognizant that this question will need to be addressed. For now, this Court shall proceed with the analysis of the other elements of the claim.

With regard to the third element, the Fourth Circuit has set "a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The Fourth Circuit has recognized that

> [w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

*Id.* at 315.16 (quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) and *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)). Additionally, to plead that the environment is sufficiently severe or pervasive, a plaintiff must allege an objectively hostile workplace environment as well as that it was subjectively perceived by the plaintiff as hostile. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001). To determine whether an environment is objectively hostile, a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted).

Upon review of Milo's Complaint and taking all inferences in her favor, this Court concludes that Milo's factual allegations are insufficient to "raise a right to relief above the speculative level." *McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d

582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). Milo alleges a mere handful of incidents, none are physically threatening although she was offended by her co-worker's references to "him" or "he" rather than "her" or "she," the alleged incidents were sporadic, and none were extremely serious. Considering all the circumstances, Milo's examples of discriminatory conduct (Compl. ¶ 55, ECF No. 1) do not describe harassment that is severe or pervasive enough to plausibly describe a hostile work environment. Milo includes allegations that the "conduct constituted harassment and a hostile work environment because of sex" (*Id.* at ¶ 79); the "harassment was frequent, severe and pervasive, physically threatening, and continued until" her discharge (*Id.* at ¶ 94); the acts "occurred frequently, were perpetuated and/or directed by the same core group of managers and employees of Defendants, were egregious, numerous and concentrated" (*Id.* at ¶ 96); were felt daily and "unreasonably interfered" with her ability to perform her job duties (*Id.* at ¶¶ 101-102); and she "felt humiliation and despair" (*Id.* at ¶ 103). These allegations certainly establish that Milo subjectively perceived her work environment as hostile. However, there are simply insufficient factual allegations to plausibly allege an objectively hostile workplace environment. Further, with regard to CyberCore specifically, it appears that only one alleged action can be attributed to CyberCore—her supervisor telling her that her skirt was too short. Such a comment is insufficient to support an action under Title VII. *See Sunbelt*, 521 F.3d at 315-16.

Accordingly, Count 1 shall be dismissed without prejudice. Milo has requested the opportunity to replead and file an Amended Complaint, and she is free to amend if she chooses.

## B. Count 2 – Unlawful Termination

In Count 2, Milo alleges that CyberCore and Northrop were joint employers that terminated her because of sex, which is a violation of 42 U.S.C. § 2000e, *et seq*. (Compl. ¶¶ 111-120, ECF No. 1.) CyberCore contends that even if Milo can establish a *prima facie* case of gender discrimination or retaliation under Title VII, she cannot show that CyberCore's reasons for terminating her were a pretext for gender discrimination or retaliation. (CyberCore Mot. Mem. 10, ECF No. 22-1.)[2]

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). As the United States Court of Appeals for the Fourth Circuit explained in *Swaso v. Onslow Cnty. Bd. of Educ.*, No. 16-2347, 698 F. App'x 745 (4th Cir. 2017), a plaintiff may establish a discrimination claim under Title VII by showing direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action or by relying on the burden-shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swaso*, 698 F. A'ppx at 747 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007)). Under the *McDonnel Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by showing that (1) she or he is a member of a protected class; (2) her or his job performance was satisfactory; (3) she or he was subjected to an adverse employment

---

[2] Northrop has not moved to dismiss Counts 2 or 3. (*See* Northrop Mot., ECF No. 23.)

action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable treatment.' " *Id.* (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)); *see also Mackin v. Charles Schwab & Co., Inc.*, No. DKC-16-3923, 2017 WL 4547423, at *3 (D. Md. Oct. 12, 2017) (applying this test to the plaintiff's unequal terms and conditions of employment claim). While a plaintiff does not need to plead a *prima facie* case to survive a motion to dismiss, the plaintiff must meet the ordinary pleading standard under *Twombly* and *Iqbal*. *McCleary-Evans*, 780 F.3d at 584-85 (explaining that a plaintiff is still "required to allege facts to satisfy the elements of a cause of action" under Title VII).

Milo need not plead a *prima facie* case to survive CyberCore's dismissal motion, but her "factual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). That is, it must be plausible based on her factual allegations that she could prove her case. *See id.* At the outset, this Court notes that "[n]otwithstanding the intricacies of proof schemes, the core of every Title VII case remains . . . 'whether the plaintiff was the victim of intentional discrimination.'" *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 302 (4th Cir. 2010) (Davis, J., concurring) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).

Milo alleges that she was terminated "because of sex, sex stereotyping, gender, gender expression, and gender identity." (Compl. ¶ 118, ECF No. 1; *see also id.* at ¶¶ 84-85.) There is, however, a dearth of factual allegations to support her conclusory statement. Certainly, there

is no dispute that her termination can be considered an adverse employment action. However, Milo fails to plead any factual allegations that would demonstrate that her transgender status was a motivating factor in CyberCore's termination of her. She alleges that she believes that Northrop requested her termination (*Id.* at ¶ 65), that CyberCore gave her a choice of taking a layoff or being fired because of her "bad attitude," which referred to her complaints about discrimination (*Id.* at ¶¶ 67-68), that no one else was "laid off" (*Id.* at ¶ 72), and that "Northrop intentionally moved [earmarked] money off the contract in order to terminate her (*Id.* at ¶ 74). Even if it is plausibly alleged that Northrop requested her removal from the project for discriminatory reasons, Milo does not plausibly allege that CyberCore terminated her for discriminatory reasons.

CyberCore contends that it terminated Milo because she failed to apply for any of the open positions at CyberCore. (CyberCore Mot. Mem. 11, ECF No. 22-1.) CyberCore makes multiple arguments of proof, presumably to support the alternate motion for summary judgment, and Milo responds with arguments demonstrating material questions of fact that would preclude summary judgment. However, this Court defers to consider this motion in a summary judgment context at this time, so these arguments are not addressed.

Accordingly, Count 2 against CyberCore shall be dismissed without prejudice. Milo requests an opportunity to replead, and she may do so if she chooses.

### C.     Count 3 – Retaliation

In Count 3, Milo alleges that CyberCore and Northrop were joint employers that deprived her of equal employment opportunities as an employee because of retaliation for her complaints of discrimination, which is a violation of 42 U.S.C. § 2000e, *et seq.* (Compl. ¶¶ 121-

16

120, ECF No. 1.) CyberCore first notes that an employee's placement on probation or a PIP is insufficient to plead an adverse employment action, and it was Northrop, not CyberCore, who placed Milo on probation and a PIP. (CyberCore Mot. Mem. 10-11, n. 4, ECF No. 22-1.) CyberCore also argues that Milo's retaliation claims fail for lack of proof, presumably in a summary judgment context, which, as stated above, this Court declines to address.

The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190 (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)). Milo alleges that "Defendants intentionally retaliated against [her] with malice or reckless indifference to [her] federally protected rights" and subjected her "to a retaliatory hostile work environment" and retaliatory termination. (Compl. ¶¶ 127-128, ECF No. 1.) As stated above, Milo has failed to plausibly allege a hostile work environment or discriminatory termination by CyberCore. Therefore, Milo's retaliation claim against CyberCore also fails.

Accordingly, Count 3 against CyberCore shall be dismissed without prejudice. As with Counts 1 and 2, Milo requests an opportunity to replead, and she may do so if she chooses.

## CONCLUSION

For the foregoing reasons:

1. Defendant CyberCore Technologies, LLC's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 22), treated as a Motion to Dismiss, is GRANTED.

2. Defendant Northrop Grumman Corporation's Motion to Partially Dismiss Plaintiff's Complaint (ECF No. 23) is GRANTED.

3. Defendant CyberCore Technologies, LLC's Objection to and Motion to Strike the Declaration of Nicolas Salter, Ph.D. (ECF No. 33) is GRANTED.

4. The declaration and report of Nicholas Salter, Ph.D. is STRICKEN from Plaintiff Megan Milo's Opposition to Defendant CyberCore's Motion to Dismiss, or, in the Alternative, for Summary Judgment (Ex. C, ECF No. 28-3).

5. Plaintiff Ms. Megan Milo's Motion for Leave to File Surreply in Response to Defendant CyberCore Technologies, LLC's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 36) is GRANTED.

6. Plaintiff's Complaint (ECF No. 1) against CyberCore Technologies, LLC is DISMISSED WITHOUT PREJUDICE. Counts 2 and 3 shall proceed against Northrop Grumman Corporation.

7. A separate Order follows.

Dated: September 17, 2019.

_____
Richard D. Bennett
United States District Judge